# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 14-04V
### Filed: May 23, 2019

| | |
|---|---|
| * * * * * * * * * * * * * * | |
| MICHELLE RENAUD and MICHAEL   * | UNPUBLISHED |
| RENAUD, *as Parents and Natural*   * | |
| *Guardians of Minor,* L.R.,   * | |
|    * | Decision on Attorneys' Fees and Costs; |
|         Petitioners,   * | Hourly Rate; Travel Costs |
| v.   * | |
|    * | |
| SECRETARY OF HEALTH   * | |
| AND HUMAN SERVICES,   * | |
|    * | |
|         Respondent.   * | |
| * * * * * * * * * * * * * * | |

*Kate Westad, Esq.*, SiebenCarey, Minneapolis, MN, for petitioners.
*Claudia Gangi, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On January 2, 2014, Michelle and Michael Renaud ("petitioners") filed a petition for compensation under the National Vaccine Injury Compensation Program[2] on behalf of their minor child, L.R. Petitioners alleged that L.R. developed transverse myelitis ("TM") as a result of receiving diphtheria-tetanus-acellular pertussis ("DTaP"), inactivated poliovirus/oral poliovirus ("IPV/OPV"), pneumococcal conjugate ("PCV-13"), hepatitis B, and rotavirus vaccinations on

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

October 3, 2011. Petition ("Pet."), ECF No. 1. On April 2, 2018, the undersigned issued a Decision awarding compensation to petitioner based on the parties' stipulations. Decision, ECF No. 67.

On October 15, 2018, petitioners filed a Motion for Attorneys' Fees and Costs. Motion for Fees, ECF No. 72. Petitioners request $68,043.50 in attorneys' fees and $28,751.38 in costs to counsel's former firm, Lommen Abdo, P.A., and $99,439.50 in attorneys' fees and $19,715.78 in costs to counsel's former firm, Larkin Hoffman, for a total of $215,950.16.[3] *Id*. at 1-2. In accordance with General Order #9, petitioners' counsel represents that petitioners incurred $1,328.54 in out-of-pocket expenses. *Id*. at 2.

On October 18, 2018, respondent filed a response to petitioner's Motion for Fees. Response, ECF No. 73. Respondent provided no specific objection to the amount requested or hours worked, but instead, "respectfully recommend[ed] that the Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs." *Id*. at 3.

Petitioners did not file a reply.

Following an initial review of petitioners' application for final fees and costs, it was determined that several issues in petitioners' application required clarification and/or additional documentation. *See* Scheduling Order, ECF No. 74. Specifically, petitioners were asked to provide information on the experience and qualifications of two attorneys who performed work in this matter, Matthew Bergeron and Nic Puechner; to address issues with block billing; to clarify instances of block billing and vagueness by petitioners' life care planner, Linda Graham; and to clarify several issues related to travel costs. *Id*. Petitioners were ordered to file a supplement to their application for fees. *Id*.

Petitioners filed an Amended Motion for Attorney's Fees and Costs ("Am. Fees") on March 7, 2019, requesting $68,043.50 in fees and $28,418.68 in costs to Lommen Abdo, P.A., and $99,439.50 in fees and $19,715.78 in costs to Larkin Hoffman, for a total of $215,617.46. ECF No. 75. Petitioners requested $1,328.54 in reimbursement of out-of-pocket expenses. *Id*. Petitioners filed an amended attorneys' fees itemization ("Am. Fees Ex. A-1") on March 21, 2019. ECF No. 77.

This matter is now ripe for decision.

**I. Legal Framework**

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, he or she is entitled to an award of reasonable attorneys' fees and costs. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

---

[3] After this Motion was filed, Ms. Westad filed a change of address indicating that she had left Larkin Hoffman and moved to a different firm, SiebenCarey. *See* ECF No. 78.

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id*.

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

## II. Discussion

**A.     Reasonable Hourly Rate**

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id*. This is known as the *Davis County* exception. *Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

In this case, Kate Westad practices in Minneapolis, MN. Other special masters have found Ms. Westad entitled to forum rates. *Dahl by Barth v. Sec'y of Health & Human Servs*., No. 13-98V, 2018 WL 6818741, at *6 (Fed. Cl. Spec. Mstr. Nov. 30, 2018).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

---

[4] The fee schedules are posted on the Court's website. *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf (last visited Apr. 30, 2019); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2017*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2017.pdf (last visited Apr. 30, 2019); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2018*,

The petitioners requested rates for Ms. Westad of $275 for work performed from 2014 through August of 2015, and $350 for work performed from September of 2015 through 2018. Ms. Westad was admitted to practice in 2003. Am. Fees, Ex. F at 1. Accordingly, in 2015 and 2016, she had 12 to 13 years of experience, and the applicable range under *McCulloch* for 2015 to 2016 is $300 to $375. The applicable range for Ms. Westad for 2017 is $307 to $383; for 2018, it is $317 to $396. Ms. Westad was previously awarded these rates in *Rus v. Sec'y of Health & Human Servs.*, No. 12-631V, 2017 WL 7053993, at *3 (Fed. Cl. Spec. Mstr. Dec. 22, 2017). I agree with *Rus* that the requested rates are reasonable and award them herein.

Petitioners have requested an hourly rate of $315 for former counsel Sheila Bjorklund for work performed from 2012 through 2014. Ms. Bjorkland has been practicing for over 25 years and "has several years of experience brining vaccine cases in this Program." *Rus*, 2017 WL 7053993, at *3. Based on her experience, I find Ms. Bjorkland's requested rate of $315 to be reasonable.

Petitioners requested an hourly rate of $190 for two associates who worked on this case in 2016, Matthew Bergeron and Nic Puechner. Mr. Bergeron was admitted to practice law in 2012; therefore, in 2016, he had 4 years of experience and the applicable *McCulloch* range is $150 to $225. Am. Fees, Ex. G-1 at 1. Mr. Puechner was admitted to practice in 2015 and therefore in 2016, had 1 year of experience and also falls into the McCulloch range of $150 to $225. *Id.* at 3. Neither Mr. Bergeron nor Mr. Puechner have any previous experience in the Vaccine Program. Neither attorney is admitted to practice in the U.S. Court of Federal Claims. In order to be eligible to practice in the Vaccine Program, an attorney must be admitted to practice in the Court of federal Claims; an attorney who is not eligible to practice in the Vaccine Program cannot recover attorneys' fees. *Underwood v. Sec'y of Health & Human Servs.*, No. 00-357V, 2013 WL 3157525, at *4 (Fed. Cl. Spec. Mstr. May 31, 2013). Because Mr. Bergeron and Mr. Puechner are not admitted to practice in the Vaccine Program, they are not eligible for an award of attorneys' fees. Accordingly, petitioners' requested fees will be reduced by the amount billed by these attorneys, $5,187.00.

Petitioners requested an hourly rate for paralegals of $125 for work performed from 2012 through 2018. This rate is within the appropriate *McCulloch* category for all years and therefore deemed reasonable.

B.   **Hours Reasonably Expended**

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691,

---

http://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf (last visited Apr. 30, 2019).

703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal. *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

  1. <u>Lommen Abdo, P.A.</u>

Upon review of petitioner's application, the undersigned finds that a number of the hours billed by counsel and staff at Lommen Abdo were "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521.[5] Specifically, the billing records include routine overbilling.[6] Counsel and staff at Lommen Abdo billed more than 85 hours for reviewing medical records. There are also billed tasks in which attorneys and/or paralegals performed administrative tasks such as making copies, setting up meetings, and making travel arrangements.[7] Additionally, there are instances of block billing,[8] as well as entries of tasks that are vague in description and do not

---

[5] The following entries are examples and are not exhaustive; they merely provide a sampling.

[6] *See, e.g.*, Am. Fees Ex. A-1, ECF No. 77-1, at 7 (Paralegal billed 1 hour for "F/u call to Dr. Fenton treating physician pertaining to setting up appointment for phone conference"); *id*. at 19 (Paralegal billed 1 hour for "Fax second request letter to Carrie Tengley Hospital"). These are examples of a pattern of billing of one hour for secretarial tasks that are not compensable.

[7] *See, e.g.*, Am. Fees Ex. A-1, ECF No. 77-1, at 14 (Paralegal billed 0.4 hours for "Review new exhibits and copy for exhibits binders"); *id*. at 15 (Ms. Westad billed 1 hour for "Attention to rescheduling trip and possible dates"); *id*. (Ms. Westad billed 1 hour for "Verify final arrangements site visit and book all itinerary to all parties"); *id*. at 16 (Ms. Westad billed 2.1 hours for "Confirm trip with all involved, attention to itinerary and flight arrangements"); *id*. at 18 (Ms. Westad billed 1 hour for "Instructions to staff to schedule and organize telephone conference with life care planners and treating physicians.").

[8] *See, e.g.*, Am. Fees Ex. A-1, ECF No. 77-1, at 1 (Paralegal billed 1.1 hours for "Receive and review correspondence form Michelle. Draft correspondence to Michelle. Receive and review correspondence from Children's Hospital Colorado and San Juan Health Partners. Draft correspondence requesting Michelle, Lillian's mom's, medical records from Northwestern New Mexico Women's Health and San Juan Regional Medical Center"); *id*. at 4 (Paralegal billed 3.5 hours for "Telephone conference with San Juan Regional Medical Center, Presbyterian Medical Services, San Juan Health Partners Pediatrics, the University of New Mexico Medical Group, the Children's Hospital of Colorado, University Physicians, the University of New Mexico Hospital, San Juan Regional Medical Center, anesthesia regarding were to send requests for itemized bills. Draft correspondence to San Juan Regional Medical Center for doctors charges, San Juan Regional Medical Center, San Juan Health Partners Pediatrics, the University of New Mexico

provide any basis for determining their reasonableness, such as 2 hours billed for "Record review/locate expert"[9] and 7.6 hours billed for "Review file, contact with experts, compile and send itemization regarding future cost analysis, attention to demand."[10] Moreover, Ms. Westad billed her full hourly rate for travel.[11] While an attorney may bill for work performed while traveling, "special masters consistently award compensation for travel time at 50% of the billing rate in the Vaccine Program." *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *24.

For these reasons, the undersigned finds that the requested $68,043.50 should be reduced by 15%. Accordingly, $57,836.98 in attorneys' fees is awarded to Lommen Abdo, P.A.

2. Larkin Hoffman

The billing records for work performed by counsel and staff at Larkin Hoffman contain similar issues, including routine overbilling,[12] block billing,[13] billing for time spent making travel arrangements,[14] and vague descriptions of tasks that do not provide a basis for determining the reasonableness of the time billed. Additionally, Ms. Westad again billed her full hourly rate for

---

Children's Hospital, the University of New Mexico Medical Group, the University of New Mexico Hospital, the Children's Hospital Colorado and University Physicians requested itemized bills"); *id*. at 18 (Paralegal billed 4 hours for "Numerous telephone calls to providers to schedule TC with life care planners: Janet Dean, Dr. Ranjit Varghese, Dr. Ibuki Suga, Dr. Jason Wilson, and Dr. Selina Silva; follow-up emails with Linda Graham and to DOJ; prepare letters and authorizations to Dr. Jason Wilson and Dr. Selina Silva; fax same").

[9] Am. Fees Ex. A-1, ECF No. 77-1, at 4.

[10] Am. Fees Ex. A-1, ECF No. 77-1, at 12.

[11] Am. Fees Ex. A-1, ECF No. 77-1, at 14 (Ms. Westad billed 9 hours at $275 for "Travel to site visit; inclement weather and delays"); *id*. (Ms. Westad billed 8.5 hours at $275 for "Travel for sit visit, return to Minneapolis due to canceled flights"); *id*. at 16 (Ms. Westad billed 7 hours at $275 for "Travel to site visit"); *id*. (Ms. Westad billed 6 hours at $275 for "Return travel to Minneapolis").

[12] Am. Fees Ex. C-1, ECF No. 75-2, at 11 (Paralegal billed 1 hour for "Telephone conference regarding additional documentation needed to supplement OOP; review file; attention to obtaining and organizing additional receipts for same"); *id*. at 14 (Ms. Westad billed 1.2 hours for "Receive response from annuity advisor and discuss, receive correspondence from client, advise DOJ accept tentative settlement and receive 15 week order"); *id*. (Ms. Westad billed 3.7 hours for "Diligent Review of stipulation and compare with settlement charts and notes and final agreement with DOJ, track money and dollar figures").

[13] Am. Fees Ex. C-1, ECF No. 75-2, at 3 (Paralegal billed 2.1 hours for "Multiple telephone conferences with San Juan Regional Medical Center, San Juan HealthPartners Pediatrics, University of New Mexico Hospitals, and High Desert pediatrics regarding itemized billing statements and review and receive correspondence from multiple providers"); id. at

[14] Am. Fees Ex. C-1, ECF No. 75-2, at 2 (Paralegal billed 0.7 hours for "Arrange for flight, hotel, and rental car to attend mediation; telephone call to inquire about conference rooms at hotel for mediation"); *id*. at 3 (Paralegal billed 0.6 hours for "Communications with Hyatt Regency regrading scheduling of conference rooms; receive contract and credit card authorization; request payment of same; email to Hyatt with contract and payment").

6

time spent traveling.[15] Based on the foregoing, the undersigned finds that attorneys' fees should be reduced by 15%. Accordingly, $80,114.63[16] in attorneys' fees is awarded to Larkin Hoffman.

**C.    Reasonable Costs**

    1. Lommen Abdo

Petitioners have requested $28,418.68 in costs for Lommen Abdo, including $16,800.00 in fees to Linda Graham, the life care planner; $4,800.00 in expert fees to Spencer Weig, M.D.; $4,601.85 in travel costs; $1,589.11 in costs associated with obtaining medical records; $951.60 in costs associated with copying and Bates-stamping documents; $400.00 in filing fees; $160.95 in medical literature costs; and $124.96 in shipping and mailing costs. *See generally* Am. Fees Ex. B, ECF No. 75-1.

There are several issues with petitioners' requested costs which necessitated the issuance of a Fees Order highlighting those issues. Some of the issues were addressed by petitioners' Amended Motion, but most were not.

Ms. Graham billed 26 hours of travel time at her full rate of $200. *See* Fees Order at 2; Pet. Ex. B at 46, 50, 87. While Ms. Graham may be compensated for work performed while traveling, "special masters consistently award compensation for travel time at 50% of the billing rate." *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *24. Accordingly, the 26 hours billed by Ms. Graham for travel time and/or "wait time" will only be compensated at half of her hourly rate of $200. Ms. Graham's fees are therefore reduced by $2600.

The Fees Order asked Ms. Westad to explain several confusing entries relating to travel costs. *Id.* at 2-3. In the Amended Motion, Ms. Westad advised that the first two home visits, originally scheduled for November of 2014 and February of 2015, were unable to be completed due to inclement weather.[17] Am. Fees at 3-4. The home visit was completed in May of 2015. *Id.* However, hotel and flights costs were still incurred for the first two visits due to the late cancellation. Petitioners billed $420.20 each for Ms. Westad and Ms. Graham's original flights to Durango, CO, for the first scheduled home visit in November of 2014, for a total of $840.40. Petitioners did not submit receipts for these flights. *See* Pet. Ex. B at 46. Petitioners additionally

---

[15] Am. Fees Ex. C-1, ECF No. 75-2, at 5 (Ms. Westad billed 5.6 hours at $350 for "Travel to New Mexico"); *id.* at 6 (Ms. Westad billed 3.5 hours at $350 for "Travel to Colorado for layover, airport delay due to weather (high winds)"); *id.* (Ms. Westad billed 4.3 hours at $350 for "Travel from Colorado to Minneapolis").

[16] Petitioner requested $99,439.50 in attorneys' fees for Larkin Hoffman. This was reduced by the $5,187.00 billed by Matthew Bergeron and Nic Puechner, resulting in $94,252.50. A 15% reduction of $94,252.50 results in fees of $80,114.63.

[17] In the Amended Motion, Ms. Westad explained that, during the first trip, she and Ms. Graham had flights from Minneapolis to Durango, CO, which connected through Denver; due to severe weather, their flights out of Denver were cancelled, and they were unable to proceed with the trip. During the second trip, while petitioner's counsel and Ms. Graham were able to travel, severe weather on the east coast prevented respondent's counsel from flying, requiring the home visit to again be rescheduled. Am. Fees at 3-4.

billed $580.00 and $152.10 for two additional plane tickets for Ms. Westad for this trip. *Id*. The only documentation for the $580.00 plane ticket is an American Express bill. *See id*. at 60. Only the $152.10 flight is properly documented. *Id*. at 61. Similarly, Ms. Graham billed $179.27 for a hotel stay at Woolley's Suites for this same visit, but documentation of that cost was not submitted. *See* Fees Order at 2; Pet. Ex. H. Additionally, the only documentation for Ms. Westad's hotel for the February of 2015 trip is a record of a card transaction to the hotel for $217.84. *See* Pet. Ex. B at 69, 70. This is not a receipt for the hotel and it does not list the charges incurred. Without appropriate documentation, these costs cannot be reimbursed. Accordingly, petitioners' costs are reduced by $1,817.51.

The other costs requested by petitioners appear reasonable and I see no need to further reduce them. Based on the foregoing, petitioners are awarded $24,001.17 in costs to Lommen Abdo.

### 2. Larkin Hoffman

Petitioners have requested $19,715.78 in costs to Larkin Hoffman, including another $5,839.00 in fees to Linda Graham, the life care planner; $5,291.62 in mediator fees and costs; $2,483.45 in fees and costs to the attorney who handled the guardianship; $1,925.00 in expert witness fees to Karl Egge, an economist; $1,650.00 in expert witness fees to Ann Marie Von Bank, an annuitist; $1,486.12 in travel costs; $791.04 in mediation costs; and $193.73 in costs associated with obtaining medical records. *See generally* Pet. Ex. D.

The costs requested for Larkin Hoffman are also undercut by a lack of documentation. For several items, including $139.21 for a rental car and $53.00 for airport parking, Ms. Westad did not submit a receipt but rather a record of a credit card transaction. Pet. Ex. D at 19, 21. Additionally, Ms. Westad submitted a record of an email reservation for a hotel stay costing $320.49 but did not provide an invoice from the hotel listing the charges. *Id*. at 20. Ms. Graham did not provide documentation for her $439.00 airfare for the mediation visit in July of 2016. Pet. Ex. D at 28. The mediator used by the parties also charged $880.46 in travel expenses, including airfare, lodging, meals, parking, and taxis and other transportation, but did not provide any documentation for these costs. *Id*. at 23-24. Because these costs were not properly documented, they cannot be reimbursed. Accordingly, petitioners' costs are reduced by $1,832.16.

Ms. Graham billed 9 hours of travel time at an hourly rate of $225. Because travel time is only compensated at half of the normal hourly rate, Ms. Graham's fees are reduced by $1012.50. Pet. Ex. D at 28.

The other costs requested by petitioners appear reasonable and I see no need to further reduce them. Based on the foregoing, petitioners are awarded $16,871.12 in costs to Larkin Hoffman.

### 3. Petitioners' out of pocket costs

Petitioners requested $1,328.54 in out-of-pocket expenses. The requested costs consist of fees and costs for guardian ad litem services. *See* Pet. Ex. E at 1, 8. The undersigned finds

petitioners' requested costs to be reasonable and awards them in full.

### III. Total Award Summary

Based on the foregoing, the undersigned **awards the total of $180,152.44**[18] **as follows:**

- A lump sum in the amount of $81,838.15 representing reimbursement for attorneys' fees in the amount of $57,836.98 and costs in the amount of $24,001.17, in the form of **a check made payable jointly to petitioners and petitioners' counsel's former law firm, Lommen Abdo, P.A.**;

- A lump sum in the amount of $96,985.75 representing reimbursement for attorneys' fees in the amount of $80,114.63 and costs in the amount of $16,871.12, in the form of **a check made payable jointly to petitioners and petitioners' counsel's former law firm, Larkin Hoffman**; and

- A lump sum in the amount of $1,328.54 representing reimbursement for out-of-pocket expenses, in the form of **a check made payable solely to petitioners, Michelle and Michael Renaud**.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[19]

**IT IS SO ORDERED.**

                                              **s/ Mindy Michaels Roth**
                                              Mindy Michaels Roth
                                              Special Master

---

[18] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[19] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.